UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEVIN YOUNG,<br><br>             Plaintiff,<br><br>     v.<br><br>JOHANNA K. SMITH; KEITH YORDY (HOWARD YORDY); SHELL WAMBLE-FISHER; JILL WHITTINGTON; SERGEANT RICHARD WINTER; CORPORAL CYNTHIA RICHMOND; CORRECTIONAL OFFICER DUNN; JOHN AND JANE DOES 1-10; BRIAN FERRIS; SCOTT ELIASON; and CHRISTOPHER BENNETT,<br><br>             Defendants. | Case No. 1:12-cv-00234-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff, a prisoner in the custody of the Idaho Department of Correction (IDOC) and currently incarcerated at Idaho State Correctional Institution (ISCI), is proceeding pro se and in forma pauperis in this civil rights action. Currently pending before the Court are the following motions: (1) Plaintiff's Motion for Extension of Time to receive complete discovery (Dkt. 25); (2) Defendant's Motion to Dismiss (Dkt. 28); (3) Defendants' Motion for Summary Judgment (Dkt. 29); (4) Plaintiff's Motion for a *Martinez* Investigation (Dkt. 33); (5) Plaintiff's Motion for Extension of Time to file a response to

**MEMORANDUM DECISION AND ORDER - 1**

Defendants' Motion to Dismiss (Dkt. 35); (6) Plaintiff's Motion for Summary Judgment

Against Defendant Scott Eliason (Dkt. 41); (7) Plaintiff's Motion to Compel Discovery

and Motion for Summary Judgment (Dkt. 42); (8) Defendants' Motion to Strike (Dkt. 46);

(9) Plaintiff's Request to Begin Proceedings for Default Judgment Against Defendant

Scott Eliason (Dkt. 47); and (10) Plaintiff's Motion to Withdraw his Motion for Summary

Judgment Against Scott Eliason (Dkt. 48).

The Court finds that the parties have adequately stated the facts and legal

arguments in their briefs and that the decisional process would not be significantly aided

by oral argument. Accordingly, the Court will decide this matter on the written motions,

briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1.

Because Plaintiff failed to exhaust available administrative remedies with respect

to his claims, the Court will grant Defendants' Motion to Dismiss. Therefore, the Court

need not address the other pending dispositive motions.

## BACKGROUND

At all relevant times, Plaintiff was a prisoner in the Mental Health Unit at ISCI.

(Complaint, Dkt. 3, at 2-7.) Plaintiff alleges that a prisoner named Brent High was moved

into his cell in October of 2009. (*Id*. at 7.) According to Plaintiff, High mentioned that he

had been convicted of first-degree murder for "hack[ing]" to death his brother and his

brother's male lover. (*Id*.) Upon hearing this, Plaintiff became concerned for his safety,

but he believed that High initially seemed stable and calm. (*Id*.) Plaintiff contends that

**MEMORANDUM DECISION AND ORDER - 2**

High eventually quit taking his medication, however, and thereafter became increasingly erratic. (*Id*.)

Around bedtime on May 27, 2010, High pressed the emergency call button in the cell that he shared with Plaintiff and told correctional officers that "creatures" were waiting outside of the cell door but that High would be safe if he "hid" in his bed. (*Id*. at 7-8.) High also told Plaintiff that Plaintiff would be fine if he went to sleep. (*Id*. at 8.) Plaintiff fell asleep but later awoke to High sitting on him and beating him on the face and head while yelling religious questions at him. (*Id*.) When officers arrived some 15 to 20 minutes later, High stood up and said, "rise my son you have just been baptized by the second coming of Christ." (*Id*.)

As a result of this attack, Plaintiff suffered a concussion, a black and swollen eye, a ruptured eardrum, blurred vision, and a chipped tooth. (*Id*. at 24.) He alleges that "it was apparent that the Mental Health staff in unit 16 knew that offender B. High had serious mental delusions that had resulted in very violent behavior, but failed to take any action to prevent him from becoming a danger to other prisoners." (*Id*. at 9.) Plaintiff does not allege that he and High had any other problems prior to the incident in question.

On May 15, 2012, Plaintiff filed this action asserting claims under 42 U.S.C. § 1983. The Court reviewed the Complaint pursuant to 28 U.S.C. § 1915 and 1915A and determined that Plaintiff had stated a colorable Eighth Amendment failure to protect claim. (Dkt. 7 at 5.) Plaintiff was not allowed to proceed on his other claim, that the

prison lacks a "viable and adequate grievance process," because there is no free-standing

constitutional right to a prison grievance process. (*Id*.)

## PRELIMINARY MOTIONS

### 1. Extension of Time to Respond to Motion to Dismiss

The Court will grant Plaintiff's Motion for Extension of Time to file a response to

Defendants' Motion to Dismiss. Plaintiff's response (Dkt. 37) is deemed timely.

### 2. Motion for *Martinez* Investigation

Plaintiff has also filed a Motion for a *Martinez* Investigation. Plaintiff asks the

Court to order Defendants to prepare a *Martinez* report, which takes its name from the

Tenth Circuit's decision in *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978) (per

curiam). A *Martinez* order requires the defendants to investigate the substance of a

prisoner's claims so that the court can determine whether the prisoner's claims are

supported by an adequate factual basis. Such an order may require the defendants to (1)

"ascertain the facts and circumstances underlying the complaint," and (2) "consider

whether any action can and should be taken by the institution or other appropriate

officials to resolve the subject matter of the complaint." *In re Arizona*, 528 F.3d 652, 655-

56 (9th Cir. 2008) (per curiam) (upholding the district court's order that defendants

submit a *Martinez* report).

Plaintiff does not offer any colorable basis for requiring that Defendants prepare a

*Martinez* report. Though Plaintiff indicates in his response to the Defendants' Motion to

**MEMORANDUM DECISION AND ORDER - 4**

Dismiss that "a Martinez Investigation . . . [would allow the Court to] look to the record allowing investigation of the grievance record and remedies," the current record is sufficient for the Court to decide the Motion to Dismiss. Therefore, Plaintiff's Motion for a *Martinez* Investigation will be denied.

**3.      Motion to Strike**

Defendants move to strike Plaintiff's Response to Defendants' Reply to Plaintiff's Objection to Defendants' Motions for Dismissal and Summary Judgment because it is a supplemental response not authorized by the Local Rules. Given Plaintiff's status as a pro se litigant, however, the Court declines to strike the supplemental response and has considered it along with all of the parties' other submissions in this case.

**4.      Request to Begin Proceedings for Default Judgment**

Plaintiff seeks a default judgment against Defendant Scott Eliason, but this Defendant has not been served. Counsel for the IDOC defendants voluntarily waived service, but only on behalf of Defendants Johanna Smith, Keith Yordy, Shell Wamble-Fisher, Jill Whittington, Richard Winter, Cynthia Richmond, Eric Dunn, Brian Farris and Christopher Bennett. Defendant Eliason is not represented by counsel for these other Defendants. Because Defendant Eliason has not yet been served, Plaintiff is not entitled to a default judgment.

**DEFENDANTS' MOTION TO DISMISS**
**FOR FAILURE TO EXHAUST**

1.      **Standard of Law for Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*, a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Failure to exhaust is an affirmative defense that is "subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In the context of such a motion, a court's consideration of evidence outside of the pleadings does *not* transform the motion to dismiss into a motion for summary judgment. Rather, in deciding a motion to dismiss for failure to

**MEMORANDUM DECISION AND ORDER - 6**

exhaust, the Court "may look beyond the pleadings and decide disputed issues of fact."

*Id.* at 1120. If a prisoner has failed to exhaust his administrative remedies, the appropriate

remedy is dismissal without prejudice. *Id.*

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*,

422 F.3d 926, 936 (9th Cir. 2005). If the defendant does so, "the burden shifts to the

plaintiff to show that the administrative remedies were unavailable." *Albino v. Baca*, 697

F.3d 1023, 1031 (9th Cir. 2012). Confusing or contradictory information given to a

prisoner "informs [the] determination of whether relief was, as a practical matter,

'available.'" *Brown*, 422 F.3d at 937.

Administrative remedies will be deemed unavailable and exhaustion excused if an

inmate shows that the required procedural steps were "not known and unknowable with

reasonable effort." *Albino*, 697 F.3d at 1037. A complaint will not be dismissed for

failure to exhaust if the prison improperly processed an inmate's grievance, if prison

officials misinformed an inmate regarding grievance procedures, or if jail staff took any

other "affirmative actions" that interfered with an inmate's efforts to exhaust. *Id.* at 1034,

1039. It is not enough that the prisoner was subjectively unaware of proper grievance

procedures; that lack of awareness must also be "objectively reasonable." *Id.* at 1038.

2.      **Grievance Process of the IDOC**

The IDOC's grievance process consists of three stages. First, any inmate with a

concern is required to seek an informal resolution by filling out an Offender Concern

Form, addressed to the staff person "most capable of responding to and, if appropriate, resolving the issue." (Whittington Aff., Dkt. 28-1, at ¶ 5.) If the issue cannot be resolved informally through the use of a Concern Form, the inmate must then file a Grievance Form.[1] (*Id.* at ¶ 6.)

A Grievance Form must be submitted within 30 days of the incident giving rise to the grievance. When submitting a Grievance Form, the inmate must attach a copy of the Offender Concern Form, showing the inmate's attempt to settle the issue informally. Grievances must contain "specific information including the nature of the complaint, dates, places, and names," and only one issue may be raised in each grievance. (*Id.* at ¶ 7.) When the grievance coordinator receives an inmate grievance, she "enters the grievance information into the Corrections Integrated System (CIS)," an electronic database used to track grievances. (*Id*. at ¶ 8.) The Grievance Coordinator then "assigns the grievance to the staff member most capable of responding to and, if appropriate, resolving the issue." (*Id*. at ¶ 9.) That staff member responds to the grievance and returns it to the Grievance Coordinator. The Grievance Coordinator then forwards the grievance to a "reviewing authority," usually a deputy warden. (*Id*.)

The reviewing authority reviews the grievance, including the staff member's response, and must deny, grant, or modify the grievance. (*Id*. at ¶ 10.) The reviewing authority returns the grievance to the Grievance Coordinator, who logs the response into

---

[1]An inmate may also file a grievance if he does not receive a response to the concern form within 7 days. (Whittington Aff. at ¶ 5.)

the database and sends the completed grievance back to the inmate. (*Id*.) If the decision

on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that

decision. The "facility head," or the warden, is the person who usually decides an

inmate's grievance appeal. (*Id*. at ¶ 13.)

Not until the completion of all three of these steps—Concern Form, Grievance

Form, and grievance appeal—is the grievance process exhausted. (*Id.* at ¶ 14.)

**3.      Plaintiff Did Not Exhaust Available Administrative Remedies**

Plaintiff was attacked by his cell mate on May 27, 2010. Plaintiff filed a timely

grievance on June 25, 2010. (Ex. D to Whittington Aff.) Defendant Yordy reviewed the

grievance and found that "staff acted appropriately before the assault and after." (*Id*.) The

Grievance Coordinator returned the grievance to Plaintiff on July 16, 2010. (*Id*.)

According to the CIS database, Plaintiff did not file an appeal of the grievance.

(Whittington Aff. at ¶ 19 and Ex. D.) In his Complaint, Plaintiff claims that he did, in

fact, file an appeal but that he did not receive a response. (Compl. at 5, 23.) Plaintiff

asserts that, in December 2011, a year and a half later, he filed another grievance to notify

prison officials of a problem. (Ex. 5 to Compl., Dkt. 3-1 at 8.) While Plaintiff claims that

he filed the December 11 grievance to report that he had not received a response to his

grievance *appeal*, the December grievance actually states only that Plaintiff "did not

receive the *grievance* back that I filed on the issue of an assault on me by my cell mate."

(*Id*.) (emphasis added). The response to the December 2011 grievance was that the

grievance coordinator had already sent Plaintiff a copy of the grievance response, and, according to her standard operating procedures, she would not send him another copy. Plaintiff does not presently dispute that he, in fact, received a copy of the grievance response.

There are two potential inferences that can be drawn from these facts: (1) Plaintiff was sent a copy of the grievance, he appealed it, and he was never sent a copy of the response to the appeal, thus necessitating his second grievance; or (2) Plaintiff received a copy of the grievance response, he never filed an appeal, and he filed the second grievance a year and half later, perhaps because he decided he wanted to file a lawsuit but knew he could not do so without having appealed the grievance response.

By submitting the CIS grievance database records, which tend to show that no grievance appeal was filed by Plaintiff, Defendants have met their initial burden of establishing a lack of exhaustion. The burden thus shifts to Plaintiff to show that he did properly exhaust all available administrative remedies. *See Albino v. Baca*, 697 F.3d at 1031. He has not done so.

Plaintiff states in his Complaint that he "is not permitted to make copies" of grievances or grievance appeals. (Compl. at 23.) Similarly, in response to the Motion to Dismiss, Plaintiff states that "there exists no method for making, neither carbon nor photocopies, or obtaining copies of grievances or grievance appeals." (Pl.'s Memo. in Opp., Dkt. 37, at 5.) Therefore, Plaintiff has no proof that he actually filed an appeal and

claims that "neither the Plaintiff nor the Defendants can definitively state that a grievance or grievance appeal was filed but not received by the Grievance Coordinator." (*Id*. at 6.)

In the context of Plaintiff's claims, however, it appears he is claiming that inmates do not receive an *automatic* copy of grievances or grievance appeals similar to the carbon-copy procedure utilized for concern forms. He claims that "the IDOC makes no allowances *to provide copies* of grievances or grievance appeals" (*id*.); Plaintiff does not appear to contend that he was affirmatively prohibited from making his own copy by visiting the prison resource center, which has a copy machine. The Court finds credible Defendant Whittington's statement that inmates "are permitted and should keep a copy of the grievances and grievance appeals they file for their records." (Whittington Aff. at ¶ 15.)

In any event, after carefully considering the entire record, the Court does not find credible Plaintiff's statement that he did, in fact, file a grievance appeal. *See Wyatt*, 315 F.3d at 1120 (stating that a court "may look beyond the pleadings and decide disputed issues of fact" when considering a motion to dismiss for failure to exhaust). The Court finds the evidence that Plaintiff did not appeal the grievance to be more credible than Plaintiff's statements, for two primary reasons: (1) if Plaintiff had filed a grievance appeal and never received a response, he likely would not have waited a year and a half to follow up on that appeal; and (2) Plaintiff's second grievance stated that he was following up on the original grievance, not the grievance *appeal*, which does not square with his

**MEMORANDUM DECISION AND ORDER - 11**

story that he appealed the grievance. The Court finds that Plaintiff did not appeal from the denial of his June 25 grievance. Therefore, he has not exhausted his remedies with respect to his Eighth Amendment claim.

Because the Court concludes that Plaintiff did not exhaust his available administrative remedies, the Court need not address Defendants' Motion for Summary Judgment.

### 4. Defendant Scott Eliason

Plaintiff has not provided Defendant Eliason's physical service address to the Court, nor has he requested service on Defendant Eliason. Because the fact that Plaintiff did not exhaust his current claims applies to all Defendants, however, a dismissal here accrues to any unserved Defendants, including Eliason. *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir. 1995) ("We have upheld dismissal with prejudice in favor of a party which had not yet appeared, on the basis of facts presented by other defendants which had appeared."). Such a dismissal of unserved defendants is particularly appropriate where there is little to no factual distinction between the defendants, and relief as to some defendants effectively means relief as to all. *Silverton v. U.S. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."); *Coleman v. Haws*, 2011

WL 2180488 (C.D. Cal. April 11, 2011) ("The Court concludes that Plaintiff's claims against these [unserved] Defendants fail for the same reason as do his claims against the other Defendants. The Court, therefore, *sua sponte* dismisses the claims against the unserved Defendants, too.") (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)). Therefore, Plaintiff's claims against Defendant Eliason will also be dismissed.

## CONCLUSION

Plaintiff failed to exhaust available administrative remedies when he neglected to appeal the denial of his grievance with respect to the assault by his cellmate. Therefore, the Court will grant the Defendants' Motion to Dismiss. Because the Motion to Dismiss will be granted, Plaintiff's discovery motions will be denied as moot.

## ORDER

**IT IS ORDERED:**

1.    Defendants' Motion to Dismiss (Dkt. 28) is GRANTED. This case is DISMISSED without prejudice.

2.    Plaintiff's Motion for Extension of Time to receive complete discovery (Dkt. 25) is MOOT.

3.    Defendant's Motion for Summary Judgment (Dkt. 29) is MOOT.

4.    Plaintiff's Motion for a *Martinez* Investigation (Dkt. 33) is DENIED.

5.    Plaintiff's Motion for Extension of Time to file a response to Defendants'

Motion to Dismiss (Dkt. 35) is GRANTED.

6.     Defendants' Motion to Strike (Dkt. 46) is DENIED.

7.     Plaintiff's Request to Begin Proceedings for Default Judgment Against

Defendant Scott Eliason (Dkt. 47) is DENIED.

8.     Plaintiff's Motion to Withdraw his Motion for Summary Judgment Against

Scott Eliason (Dkt. 48) is GRANTED. Plaintiff's Motion for Summary

Judgment Against Defendant Scott Eliason (Dkt. 41) is MOOT.

9.     Plaintiff's Motion to Compel Discovery and Motion for Summary Judgment

(Dkt. 42) is MOOT.

DATED:  **February 7, 2014**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 14**